IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CHAPTER 13** |
| **MIKEL JOE DAVIS,** | ) | |
| **DOROTHY ELAINE DAVIS** | ) | |
| | ) | |
| **Debtors** | ) | **CASE NO.  05-72683** |

_____

| | | |
|---|---|---|
| **MIKEL JOE DAVIS and** | ) | |
| **DOROTHY ELAINE DAVIS** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding No. 06-07126** |
| | ) | |
| **ABN AMRO MORTGAGE GROUP,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**MEMORANDUM DECISION**

This adversary proceeding concerns defendant ABN AMRO Mortgage Group's alleged mishandling of the plaintiffs' residential mortgage loan which was referred to counsel for foreclosure prior to the filing of their bankruptcy petition in this Court and which they allege was the precipitating cause of such filing. The specific matter presently before the Court is such defendant's Motion to Dismiss. The Complaint to which such Motion is addressed is composed of five counts and counsel for the parties have agreed upon a proposed order which deals with Counts I, III and IV. They have not agreed as to Count II, which asserts a cause of action for alleged negligence, and Count V, which alleges a cause of action for intentional infliction of emotional distress. At the Court's invitation, counsel have submitted written arguments and the Motion is ready for decision. For the reasons noted below, the Court will deny the Motion to

**Dismiss as to Count II and will grant it as to Count V.**

## FACTUAL ALLEGATIONS

On or about November 14, 2002, Mr. and Mrs. Davis, the Debtors and the plaintiffs in this proceeding, entered into a mortgage transaction involving a note and deed of trust with defendant FNB Southeast Mortgage Corporation (hereinafter "FNB"). Within days thereafter, specifically on November 22nd, FNB sold both the loan and its servicing to defendant ABN AMRO Mortgage Group (hereinafter "ABN AMBRO"), although the Davises were not apprised of that fact until on or about January 17, 2003, when they received a letter dated January 7 to such effect. Because they had not been made aware of such transfer earlier, they made the mortgage payment due January 1 to FNB. FNB did not forward this payment to ABN AMRO in a timely manner and perhaps not ever, apparently due to the plaintiff's failure to include the pertinent loan number on the money order making such payment. From this unfortunate start, things went from bad to worse. Although the plaintiffs at all times had required insurance coverage in force, ABN AMRO claimed that it did not have proof of such insurance coverage and therefore "force placed" separate coverage to protect it from the possibility of uninsured casualty loss. This action was despite the fact, according to the Complaint, that both an annual premium for such insurance had been paid at settlement and that payments for eleven additional months of premium for such insurance were paid out of settlement into the escrow account. There ensued, according to the allegations contained in the Complaint, a continuing and very frustrating series of exchanges in which ABN AMRO claimed that all required payments had not been made or proof of insurance coverage provided and demanded payment for the "force placed" insurance and assessed late payment charges,

and the Debtors repeatedly but to no avail supplied the documentation necessary to establish that such contentions were inaccurate.  Ultimately ABN AMRO decided to foreclose, refused to accept and actually returned to the Davis two mortgage payments, and referred the account to legal counsel for the purpose of foreclosure.  Their home was advertised for sale by foreclosure and the Davises were ultimately forced to file a petition in this court to halt that process.  They allege that these events were so stressful that they impacted their marriage and that they are now separated as a result.

The Plaintiffs make, among many others, the following specific allegations regarding FNB and ABN AMRO:

> XXXV.  Your Plaintiffs allege that pursuant to the terms of the aforesaid note and Deed of Trust the Plaintiffs prior to the Notice of Foreclosure had made all required payments (amounting to a total of $18,169.68 over three years) in a timely manner.
>
> XXXVI.  Your Plaintiffs allege that the Defendants and both of them took payments without properly crediting the same, failed to make required payments from escrow, overcharged the Plaintiffs or charged them late fees for payments that had been timely made, and failed to correctly apply payments made after having been so notified. . . .
>
> XL[I].  The Defendant ABN-AMRO  owed the Plaintiffs and both of them a duty of care in the processing and handling of the escrow accounts and payments of principal and interest  of the Plaintiffs.
>
> XLII.  The Defendants [sic] ABN-AMRO  failed to exercise the degree of care required of a lending institution in handling of the Plaintiffs [sic] accounts and payments.
>
> XLIII.  Particularly in the handling of escrow accounts the Defendant ABN-AMRO has a fiduciary duty to process such accounts with the utmost fidelity.
>
> XLIV.  As a direct and proximate result of the Defendants [sic] ABN-AMRO careless, negligent and indifferent handling of the

**payments (both to be applied to escrow accounts and to be applied to payments of interest and principal) of the Plaintiffs and both of them they have suffered financial loss amounting to approximately $152,663.00 (One Hundred Fifty Two Thousand Six Hundred Sixty Three Dollars) [sic] . . .**

**LIX.  The Defendant ABN-AMRO having knowledge that the charges to the Plaintiff's bill resulted from the failure of FNB Southeast to forward the January 2003 payment, continued to apply late charges to the Plaintiffs [sic] account. Despite repeated notices from the Plaintiffs, and Augusta Mutual Insurance, the Defendant ABN-AMRO twice failed to correctly apply escrow amounts to Plaintiffs [sic] Hazard Insurance resulting in force placed insurance charges of $1557.60. The Defendant ABN-AMRO despite having knowledge that the aforesaid late charges, application of payments to the Plaintiffs [sic] Escrow account were in dispute, in June and July of 2005 refused to accept the timely tender of Plaintiffs [sic] monthly payment.**

**LX.  The Defendant ABN-AMRO having knowledge that the Plaintiffs were entitled to a credit in the approximate amount of $1159.07, and further having knowledge that Plaintiff [sic] had tendered $1250.00 in June and July of 2005 proceeded to forward the Plaintiffs [sic] account to an Attorney for foreclosure.**

**LXI.  The Defendant ABN-AMRO knowingly, intentionally and recklessly  failed to credit payments made by the Plaintiffs, failed to properly credit escrow payments, failed to carry out their fiduciary duty and pay the appropriate amounts out of escrow,  over charged the Plaintiffs and then proceeded to attempt to foreclose upon the Plaintiffs [sic] residence.**

**LXII.  As a direct and proximate result of the Defendants [sic] knowing, intentional and reckless acts, the Plaintiffs and both of them have suffered mental distress causing, them many sleepless nights and resulting in the breakdown of their marital relationship.**

### CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of

**28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the**

**District Court on July 24, 1984.  It is clear that both the Debtors' residential property and this claimed pre-petition cause of action are assets of the bankruptcy estate and that the resolution of this dispute between the mortgagors and the mortgagee will  "affect" such estate.  See 1 *Collier on Bankruptcy* ¶ 3.01[4][c][ii] at pp. 3-24 and -26 (15th ed. rev. 2006, Lawrence P. King, ed.); *Paccor, Inc. v. Higgins*, 734 F.2d 984, 994 (3rd Cir. 1984).  The Plaintiffs allege that this adversary proceeding is a "core" bankruptcy matter within the contemplation of 11 U.S.C. § 157(b)(2).   ABN AMRO has not responded to such allegation despite the requirement to do so imposed by Bankruptcy Rule 7012(b).  While not all actions brought by bankruptcy debtors attempting to pursue purported pre-petition claims are "core" bankruptcy proceedings, *see In re Apex Exp. Corp.*, 190 F.3d 624, 630-33 (4th Cir. 1999), the Court concludes that it is not necessary at this point to reach a conclusion as to whether this particular dispute is "core" or "non-core" because the question before the Court is purely one of law, namely, whether the factual allegations made in the Complaint are sufficient to allege causes of action in Counts II and V.  *See Id.*, 190 F.3d at 630.**

### COUNT II ALLEGING NEGLIGENCE

**Count II alleging negligence follows Count I alleging breach of contract.  ABN AMRO urges that the second count simply alleges a negligent breach of a contractual duty and therefore does not set forth a valid cause of action.  It is certainly true that as a general proposition there is no cause of action under Virginia law for negligent breach of contract.  If the duty allegedly breached is purely one of contract, no cause of action exists for negligent breach of that contractual duty.  *See Holles v. Sunrise Terrace, Inc*., 257 Va. 131, 136, 509 S.E.2d 494, 497 (1999); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc*., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998); *Umstead v. Chase Manhattan Mortgage Corp*.,**

2005 U.S. Dist. LEXIS 42500, *10 (W.D. Va. 2005).  As the Supreme Court of Virginia stated in *Holles*, "To establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely be virtue of a contract."  509 S.E.2d at 497.  Whether such a common law duty is owed is a question of law.  *Id.  Holles* dealt with a claim of a nursing home resident who was injured as a result of the criminal conduct of a stranger and the defendant provided management services to the plaintiff's landlord.  The Court held that there was no "special relationship" between the plaintiff and the defendant which imposed any common law duty upon such defendant.  *Holles,* 509 S.E.2d at 498.  The Holles decision followed earlier decisions of the Court which had held that no "special relationship" existed between a landlord and a tenant which imposed upon the former a duty to protect against the foreseeable risk of criminal conduct of others.  *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 447-48, 357 S.E.2d 200, 210 (1987); *Gulf Reston, Inc. v. Rodgers*, 215 Va. 155, 158, 207 S.E.2d 841, 844 (1974).

   In the case before this Court the alleged injury is not one of physical injury to the plaintiffs, but is two-fold in nature, a personal injury in the nature of severe emotional distress claimed to have resulted from ABN AMRO's alleged knowingly wrongful attempted foreclosure of their residence, as well as a breach of their contractual and other legal rights with resulting injury to their economic interests.  The relationship created between FNB and the Davises was clearly one of contract and ABN AMRO is the assignee of the interests of FNB in such contract.  The acts complained of, however, do not relate to any actions by ABN AMRO as mortgagee as such but as to ABN AMRO as servicer of the mortgage loan and its referral of the loan for foreclosure.  There would be no difference in

the nature of the wrong allegedly done to the mortgagors by ABN AMRO if it had simply served as the servicer of the loan for FNB and had recklessly mishandled the account. At this point this Court has not been cited any authority that a mortgage loan servicer does or does not have any common law duty to the mortgagor to use even the slightest duty of care in the performance of its business operations so that mortgagors' loan payments are properly credited, their payments into escrow accounts managed by such servicers are properly credited and disbursed to the relevant tax authorities and insurance companies, and their loans are not referred for foreclosure even though the mortgagors have "made all required payments . . . in a timely manner." *Complaint*, ¶ XXXV. The Plaintiffs specifically allege that ABN AMRO did owe them "a duty of care in the processing and handling of the escrow accounts and payments of principal and interest", ¶ XL[1], and that such defendant "failed to exercise the degree of care required of a lending institution" in the handling of their transactions, ¶ XLII. The potential for harm to mortgagors whose residential mortgage loan is wrongfully referred for foreclosure even though their loan is not in default seems self-evident. That the degree of harm from a completed wrongful foreclosure might well exceed any purely contractual measure of damages resulting from such an act also seems evident. This Court may not dismiss a complaint under Rule 12(b)(6) (F.R.B.P. 7012(b)(6)) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barksdale v. Nationwide Mut. Ins. Co.*, 2007 WL 200955 at *1 (W.D. Va. 2007) and *Umstead*, 2005 U.S. Dist. LEXIS 42500 at *4, both quoting from *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). At this point the Court is uncertain whether or not the Plaintiffs may be able to establish that ABN AMRO was subject to any common law duty with respect to its loan servicing operations and that any

such duty was breached with resulting and foreseeable harm to them as the mortgagors.

Accordingly, at this point the Court will deny the motion to dismiss without prejudice to such defendant's right to renew its contentions at the conclusion of all evidence and arguments in this proceeding.

### COUNT V ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

While Count V appears intended to assert a cause of action for the specific tort of intentional infliction of emotional distress under Virginia law, *see Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), and counsel's arguments in his brief seem to support such an understanding, there is some room for doubt on this point because the allegations for this Count incorporate the allegations of Count III, which among other things assert violations by the defendants of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et. seq. There is case authority allowing emotional distress damages as an element of actual damages recoverable for a violation of § 2605, which deals in part with the statutory duties of loan servicers, of such Act. *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d (N.D. Ill. 2001). Any damages exceeding "actual damages", however, are recoverable only where "a pattern of noncompliance with requirements of this section [§ 2605] is established and then only "as the court may allow" up to a maximum of $1,000. 12 U.S.C. § 2605(f). Count V seeks both compensatory and punitive damages in the amount of $200,000. The elements of a cause of action under Virginia law for emotional distress not involving any physical injury, as set forth in *Womack*, are as follows:

> We adopt the view that a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or

> **should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.**

**210 S.E.2d at 148. This cause of action, sometimes referred to as the tort of "outrage",**

***Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991), requires "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Even when that high standard is met, the distress suffered as a result must indeed be quite severe. For example, in *Russo*, allegations that the plaintiff was "nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to work" were not sufficient because "[t]here is no claim, for example, that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined in a home or a hospital, or that she lost income." 400 S.E.2d at 163. In the case of *Ely v. Whitlock*, 238 Va. 670, 385 S.E.2d 893 (1989), which involved an action by attorneys against another attorney who had instituted a disciplinary complaint against them, the Court held that the allegations of intentional infliction of emotional distress were insufficient because they did not assert "that Ely instituted the ethics complaint for the specific purpose of inflicting emotional distress upon them, or that she intended her specific conduct and knew or should have known that emotional distress would likely result." 238 Va. at 677, 385 S.E.2d at 897.**

> **The plaintiffs allege that ABN AMRO "knowingly, intentionally and recklessly failed to credit payments made by the Plaintiffs, failed to properly credit escrow**

payments, failed to carry out their [sic] fiduciary duty and pay the appropriate amounts out of escrow, over charged the Plaintiffs and then proceeded to attempt to foreclose upon the Plaintiffs [sic] residence." The Complaint before the Court, however, does not specifically allege that the relevant ABN AMRO employee or employees made the foreclosure referral with the specific intent to inflict emotional distress upon the borrowers or that he, she or they knew or should have known that such distress would likely result. Certainly a loan owner or servicer's decision to refer a loan for foreclosure when such is warranted, or reasonably believed in good faith to be warranted, by reason of the existence of one or more apparent loan defaults, is not actionable even though it might be reasonably expected that a foreclosure upon the borrowers' residence will likely cause them emotional distress, but when such an action is taken without reasonable cause and with knowledge that the borrowers have timely met all obligations imposed upon them with respect to the loan, a considerably different situation is presented.  Such an action, knowingly made in bad faith as alleged, might be considered an outrageous and intolerable act. The contours of what conduct may reasonably be deemed to be an "outrageous and intolerable act" are not at all precise, but Judge Raymond A. Jackson of the United States District Court for the Eastern District of Virginia held, in ruling on a motion to dismiss under Rule 12(b)(6), that an alleged intentional lie by a licensed attorney made to a defendant to a civil warrant for the purpose of obtaining an unwarranted default judgment against that defendant could create a jury question as to whether such conduct was sufficiently "extreme and outrageous" to provide a proper foundation for an intentional infliction of emotional distress cause of action.  *Perk v. Worden*, __ F. Supp.2d ___, 2007 WL 219997, *5 (E.D. Va. 2007).

The plaintiffs allege a causal connection between the foreclosure referral and their emotional distress, including but apparently not limited to claimed severe damage to their marriage. How that might be is not at all clear, but that is the allegation in the Complaint. The plaintiffs specifically allege that as a proximate result of the defendants' acts "they have suffered mental distress causing, [sic] them many sleepless nights and resulting in a breakdown in their marital relationship." ¶ LXII. While sleepless nights standing alone would clearly be too modest a consequence to support a viable claim for emotional distress, proof that as a proximate result of ABN AMRO's alleged wrongful conduct the debtors' marriage was destroyed might satisfy the requirement that the emotional distress suffered be "severe". Judge Jackson in his opinion in the *Perk* case held that relatively simple allegations of severe emotional distress are sufficient under Federal rules of pleading to survive a motion to dismiss, even though they might be inadequate if the cause of action were being pursued in the Virginia state courts. *Id.*

At this point in this adversary proceeding the Court must resolve any uncertainty as to whether or not the plaintiffs will be able to prove any "set of facts" which might be severe enough to establish a viable claim for intentional infliction of emotional distress in their favor, even when the Court suspects that such success is unlikely. The Court concludes under the teaching of *Ely v. Whitlock* that Count V fails to allege a claim upon which relief can be granted because it fails to allege specifically that the relevant employee or employees of ABN AMRO made the foreclosure referral with the specific intent to inflict emotional distress upon the Davises or that they knew or should have known that such distress was likely to occur. Accordingly, the Court will grant ABN AMRO's motion to dismiss Count V of the Complaint, but will also grant leave to the

**plaintiffs to file an amended complaint making sufficient allegations of a cause of action for emotional distress.**

## CONCLUSION

**For the reasons stated above, the Court by its separate order will deny the Motion to Dismiss as to Count II, but will grant it as to Count V, but with appropriate leave being granted to the plaintiffs to file an amended complaint.**

**This 15th day of March, 2007.**

_____
**William F. Stone, Jr.
United States Bankruptcy Judge**